[904 NE2d 813, 876 NYS2d 677]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRITZ ELYSEE, Appellant.

Argued January 7, 2009; decided February 17, 2009

## POINTS OF COUNSEL

*Warren S. Landau,* New York City, and *Lynn W.L. Fahey* for appellant. I. When the People seized and tested blood samples medical staff had drawn to treat appellant, admission of the test results on these samples violated the physician-patient privilege and denied appellant due process. (*Matter of Grand Jury Investigation in N.Y. County,* 98 NY2d 525; *Dillenbeck v Hess,* 73 NY2d 278; *Williams v Roosevelt Hosp.,* 66 NY2d 391; *People v Sinski,* 88 NY2d 487; *Matter of Grand Jury Investigation of Onondaga County,* 59 NY2d 130; *People v Decina,* 2 NY2d 133; *Matter of City Council of City of N.Y. v Goldwater,* 284 NY 296; *Buffalo Loan, Trust & Safe Deposit Co. v Knights Templar & Masonic Mut. Aid Assn.,* 126 NY 450; *Edington v Mutual Life Ins. Co. of N.Y.,* 67 NY 185; *Doe v Community Health Plan— Kaiser Corp.,* 268 AD2d 183.) II. The court denied appellant due process and a fair trial when it denied the joint request of defense counsel and the prosecutor to charge criminally

negligent homicide as a lesser included offense of second-degree manslaughter, when there was a reasonable view of the evidence that appellant had acted negligently rather than recklessly. (*People v Glover,* 57 NY2d 61; *People v Devonish,* 6 NY3d 727; *People v Butler,* 84 NY2d 627; *People v Martin,* 59 NY2d 704; *People v Green,* 56 NY2d 427; *People v Henderson,* 41 NY2d 233; *People v Heide,* 84 NY2d 943; *People v Stanfield,* 36 NY2d 467; *People v Helliger,* 96 NY2d 462; *People v Harris,* 81 NY2d 850.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Diane R. Eisner* and *Leonard Joblove* of counsel), for respondent. I. The trial court properly admitted evidence of defendant's blood alcohol content that was derived from a blood specimen drawn in the course of medical treatment. In any event, any error in the admission of that evidence was harmless. (*Matter of Drew v Schenectady County,* 88 NY2d 242; *Debevoise & Plimpton v New York State Dept. of Taxation & Fin.,* 80 NY2d 657; *Matter of Grand Jury Proceedings [Doe],* 56 NY2d 348; *Madden v Creative Servs.,* 84 NY2d 738; *Dillenbeck v Hess,* 73 NY2d 278; *Williams v Roosevelt Hosp.,* 66 NY2d 391; *Cabell v Markham,* 148 F2d 737; *Matter of Grand Jury Investigation in N.Y. County,* 98 NY2d 525; *People v Sinski,* 88 NY2d 487; *Buffalo Loan, Trust & Safe Deposit Co. v Knights Templar & Masonic Mut. Aid Assn.,* 126 NY 450.) II. Defendant's claim that criminally negligent homicide should have been submitted to the jury as a lesser-included offense of reckless manslaughter is partly unpreserved for appellate review, and in any event is meritless. (*People v Barney,* 99 NY2d 367; *People v Van Norstrand,* 85 NY2d 131; *People v Green,* 56 NY2d 427; *People v Register,* 60 NY2d 270, 466 US 953; *People v Donohue,* 123 AD2d 77; *People v Rykaczewski,* 121 AD2d 409; *People v Morton,* 100 AD2d 637; *People v Monroe,* 90 NY2d 982; *People v Robinson,* 36 NY2d 224; *People v Henderson,* 41 NY2d 233.)

**OPINION OF THE COURT**

JONES, J.

On the morning of December 25, 2003, defendant automobile driver was involved in a four-vehicle car accident in Brooklyn, New York. As a result, a passenger in a pickup truck was killed and several other persons, including defendant, were injured. At approximately 5:30 A.M., defendant was taken to Kings County Hospital where, upon his arrival and in accordance with the hospital's routine practice for treating trauma victims, blood

samples were drawn solely for treatment purposes (5:30 A.M. samples).

Pursuant to a court order issued by Supreme Court at approximately 1:50 P.M. that day, defendant was compelled to submit to a chemical test of the alcohol or drug content of his blood (blood alcohol test) (*see* Vehicle and Traffic Law § 1194 [3]; CPL 690.35, 690.36). To effect this order, a registered nurse, in the presence of a New York City police officer, drew a second set of blood samples at approximately 2:50 P.M. (2:50 P.M. samples) (*see* Vehicle and Traffic Law § 1194 [4] [a]). On December 26, 2003, the 2:50 P.M. samples were forwarded by the New York City Police Department to Dr. Elizabeth Marker, a forensic toxicologist employed by the New York City Office of Chief Medical Examiner, to perform a court-ordered test in order to determine defendant's blood alcohol level at the time of the accident. On December 29, 2003, a search warrant for the seizure of the 5:30 A.M. samples from the hospital was issued and executed pursuant to CPL 690.10 (4). The New York City Police Department, in turn, submitted the 5:30 A.M. samples to Dr. Marker.

Prior to trial, defendant brought an omnibus motion to, among other things, controvert the search warrant and suppress the results of the blood alcohol test performed on the 5:30 A.M. samples, arguing that the seizure of his blood, pursuant to CPL 690.10, violated the physician-patient privilege defined by CPLR 4504.* The court denied the motion to controvert, finding the facts alleged in the search warrant application sufficient to establish probable cause to believe that defendant was operating a motor vehicle while under the influence of alcohol. The court also denied that branch of the omnibus motion which sought to suppress the results of the blood alcohol test performed on the 5:30 A.M. samples. The court determined that CPLR 4504 "has no application to vials of blood, which were the objects of the search warrant."

At defendant's jury trial, Dr. Marker testified that she tested both the 2:50 P.M. and 5:30 A.M. samples. Regarding the 2:50 P.M.

---

* CPLR 4504 (a) provides, in pertinent part, that

"Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."

samples, she noted that the results revealed defendant's blood alcohol "concentration [to be] .05 gram percent." Dr. Marker opined that it is scientifically possible, through reverse extrapolation, to reliably determine what a person's blood alcohol content was at an earlier time based upon a later blood alcohol test when certain assumptions are made; e.g., assuming that the alcohol in defendant's system was fully absorbed at the time of the accident, going back a period of 10 hours from the time the 2:50 P.M. blood samples were taken, defendant's blood alcohol level range at the time of the accident would have been "between 0.20 [gram] percent or 0.25 [gram] percent." Dr. Marker further testified that the 5:30 A.M. samples revealed a blood alcohol concentration of .23 gram percent and .21 gram percent, respectively. She opined that these results were consistent with, and substantiated, the results of the reverse extrapolation analysis of the 2:50 P.M. samples. Put another way, the test of the two separate blood samples reached nearly identical results.

At the charge conference, both the People and defense asked the court to charge criminally negligent homicide as a lesser included offense of second degree manslaughter. The court refused, concluding that there was no reasonable view of the evidence to support the charge of criminally negligent homicide.

The jury convicted defendant of manslaughter in the second degree, assault in the second degree, assault in the third degree, and driving while intoxicated. Defendant appealed from Supreme Court's judgment of conviction. This appeal brought up for review that portion of defendant's omnibus motion seeking to suppress physical evidence and the court's refusal to charge criminally negligent homicide.

The Appellate Division affirmed the judgment, holding that a blood specimen taken from a patient by a medical professional is not "information" protected by the physician-patient privilege as defined in CPLR 4504 (a) and, accordingly, is subject to seizure (49 AD3d 33 [2007]). The Appellate Division also held that "the trial court properly refused to charge the jury with criminally negligent homicide as a lesser-included offense of manslaughter in the second degree" because there was no reasonable view of the evidence which would support a finding that the lesser offense but not the greater offense was committed by the defendant (id. at 49). A Judge of this Court granted defendant leave to appeal (10 NY3d 840 [2008]) and we now affirm.

■ We agree with the lower courts that defendant's motion to suppress the 5:30 A.M. samples was properly denied, though we need not decide whether CPLR 4504 applies to these samples. Pursuant to Vehicle and Traffic Law § 1194 (2) (a), "[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of . . . breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of the blood" under certain prescribed conditions. In addition, such chemical tests can also be compelled by court order under Vehicle and Traffic Law § 1194 (3) when, among other circumstances,

> "a person other than the operator was killed or suffered serious physical injury . . . ; and

> "such person operated the vehicle in violation of any subdivision of section eleven hundred ninety-two of this article . . . and . . .

> "has been placed under lawful arrest; and . . .

> "has refused to submit to a chemical test . . . or is unable to give consent to such a test" (§ 1194 [3] [b] [1], [2] [a]; [3], [4]).

Therefore, even if these samples were privileged, under the facts and circumstances of this case, the privilege was overcome when the police officers executed the court order issued pursuant to Vehicle and Traffic Law § 1194 (3).

Here, it is illogical to conclude that a blood sample taken at 5:30 A.M. cannot be seized pursuant to a properly issued court order, merely because the order issued *after* the blood was actually drawn by an authorized person. Furthermore, inasmuch as the Vehicle and Traffic Law authorizes a chemical test under the circumstances of this case, and a court order issued compelling "that the defendant shall submit to a chemical test of the alcohol or drug content of his blood," the seizure of the earlier blood sample was in accord with the statute.

■ We disagree with defendant's argument that Supreme Court erred in not charging criminally negligent homicide as a lesser included offense of second degree manslaughter. A person who fails to perceive a substantial and unjustifiable risk by reason of his intoxication acts recklessly rather than with criminal negligence (*see People v Donohue*, 123 AD2d 77, 81 [3d Dept 1987]; *People v Van Dusen*, 89 AD2d 649 [3d Dept 1982]). Thus, given the overwhelming evidence of defendant's intoxication,

we agree with the lower courts that there was no reasonable view of the evidence which would support a finding that the defendant committed criminally negligent homicide (*see* CPL 300.50 [1]; *People v Barney*, 99 NY2d 367, 371 [2003]).

Accordingly, the order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur; Chief Judge LIPPMAN taking no part.

Order affirmed.